## WM. H. FINLEY *v*. JESSE GAUT *et al.*

JUDGMENTS AND DECREES. *Sale of land under execution issued upon a judgment that has been satisfied. Void. Evidence.* An execution issued upon a judgment which has been satisfied, has no basis on which to rest, and a sale under such execution is void; the rule *caveat emptor* applies to the purchaser. And if the fact of the judgment having been satisfied does not appear on the record, extraneous testimony may be introduced to show that fact. This is not a collateral attack on the judgment, nor an attack to show by extraneous evidence that i t

Finley *v.* Gaut.

is void, but is simply showing that the judgment has, subsequently to its rendition, been paid.

Cases cited: Henderson *v.* Starritt, 4 Sneed, 470; Hughes *v.* Bryan's Lessee, 6 Yerg., 471; Ingle *v.* McCurry, 1 Heis., 26; Sherrell *v.* Goodrum, 3 Hum., 428.

FROM BRADLEY.

Appeal from the Chancery Court.

No record found.

FREEMAN, J., delivered the opinion of the court.

This bill is filed to have a cloud removed from the alleged title of complainant. The adverse title is one obtained by Jesse Gaut, under a purchase made by virtue of sales made under two executions issued from the Circuit Court of Bradley county, on two judgments rendered in favor of Jno. H. Paynes, clerk of the Circuit Court of Bradley county, on notes given by Finley for the purchase of the land now in controversy. The first judgment was rendered January, 1861, for $133, and costs, the second at September term, 1861, and the second note given for the land, for $575, with interest and costs.

An amended bill is filed to have a tax title, revealed by Gaut's answer as having been obtained by him, declared void and set aside.

We may dispose of the tax title here by saying it is a nullity by reason of the fact that the land was advertised for sale but twice, and by the further fact of defective description of the land in the advertise-

ment, it being similar to, if not more defective than the case of *Henderson* v. *Starritt*, 4 Sneed, 470, and falls clearly within the ruling in that case.

Another preliminary question may be disposed of here. Gaut, in one aspect of his case, claims title to the land under a redemption made by one Philips as a judgment creditor of Finley. The judgment under which this redemption was had, as shown by Gaut's answer, was obtained in an action of trespass, instituted in 1864, against Finley *et als.*, by Philips, while Finley was absent in the army, perhaps. There was no service of process on him, or appearance by him in the case, but an ancillary attachment was issued by the clerk in the case, and levied on Finley's land. Publication was ordered as to Finley, a declaration was filed, on the assumption that the levy on the land brought Finley into court. Judgment by default was taken under this proceeding, a jury empaneled, and ultimately a judgment rendered against Finley *et als.* for $3,000 damages. Under this judgment Philips attempted a redemption of the land from Gaut, who had obtained an assignment of the rights of Copeland, who had purchased under the two first judgments referred to.

The record filed in the case show the proceedings to have been as stated in Gaut's answer, that is, a case of a judgment obtained without service of process in an action of test, the assumed jurisdiction being alone by virtue of the levy of an ancillary attachment on the land.

The levy of the attachment in this case, without

service of process personally, did not give the court jurisdiction, nor bring the party into court, as has been repeatedly held by this court.    *Ingle* v. *McCurry,.* administratrix, 1 Heis., 26, and other cases.

A judgment rendered against a party without service of process, without appearance by him, except in cases provided for by statute, is void: 6 Yer., 471. A void judgment, apparent on the face of the record, is a nullity, is no judgment at all, is no protection to anyone, and stands as if no judgment at all had been rendered: *Sherrell* v. *Goodrum,* 3 Hum., 428, and other cases cited; King's Digest, vol. 3, p. 121, 122. Such judgment must be held a nullity whenever brought in question, the defect appearing on its face.    We therefore hold that no rights were or could be obtained by either Philips or Gaut under this proceeding. None but a judgment creditor could redeem.    Philips was not a judgment creditor; his assumed judgment, being a nullity, did not entitle him to the rights of such a creditor.

The case stands, then, alone upon the rights of Gaut under the transfer from Copeland and wife of their purchase of the land under the sales by execution, on the two judgments in favor of Payne, clerk, from the Circuit Court of Bradley county.    If Copeland obtained a good title under this purchase, it having been transfered to Gaut, then he has the title, or, at any rate, the right to call for the title of Finley, which defeats Finley's claim of title to the land in his bill.

It is insisted this title is void because the judg-

ments were paid to the clerk, or the amounts due on the notes, and they being paid, no execution could be issued on them, or sale be legally made, so as to vest title in the purchaser.    The rule of *caveat emptor* applies to a purchaser at execution sale, and he must stand or fall on the validity of the title thus acquired.

It is insisted, the judgments being regular on their face, cannot be collaterally attacked.    This principle is axiomatic, but there is no collateral attack on the judgments themselves, no effort to show they are void by extrinsic testimony; but the ground assumed, as we understand it, is that the judgments have been paid and discharged.    If this be so it is clear the executions were wrongly issued, and had no basis on which to rest.

We do not think the fact of payment of the notes before judgment could be shown by way of defeating the judgments, as this would be a proper matter of defense to the motion for judgment, and a proper ground for reversal on appeal or writ of error.    If, with such evidence presented, the court had rendered judgment, a party could not be allowed to attack a judgment collaterally, and have it declared void by showing that there existed no cause of action at the time of the commencement of the suit, or at the rendition of the judgment.    This would be to re-try collaterally the question already adjudicated in the former trial when the judgment was rendered.

The only question, then, is, whether the judgments are shown to have been paid and discharged since

their rendition. The judgments on their face being regular, and no discharge of them appearing of record on the execution docket, where by law such satisfaction ought to appear, the burden of proof is on the party asserting the fact to make it out by clear and satisfactory evidence.

The facts shown in the record are, that on the 10th December, 1860, before the rendition of the first judgment, sixty-seven dollars were paid on the first note, which was allowed as a credit in the rendition of that judgment, also a credit for the interest of Finley of eight-tenths, leaving the amount for which judgment was rendered, $183. On the 30th of November, 1861, $100 more was paid, which was credited on the judgment, leaving thirty-three dollars, or about that, still due. The execution on this judgment had been stayed on the 7th of March, 1861, under the act of 1861.

There is also a receipt of Paynes, proven in the record, for eighty-eight dollars, paid November 2, 1862. which does not specify on what judgment paid, but does specify it was on a judgment rendered against him and Long, his surety, by the Circuit Court of Bradley county. We take it, this must also be held to have been paid on these judgments, the latter having been rendered in September, 1861, for the full amount of the $575, note and interest.

This does not discharge the judgments. It is true, on the last note Finley was entitled to have had a credit for his share of the lands owned by him of eight-tenths, which was not done; but on the principles we have laid down we cannot go into that question.

The clerk may have, and did take judgment for more than the judgment ought to have been given for; but we are unable to see on what principle we could hold the judgment void for this reason. It would be to invalidate a judgment in a collateral investigation by evidence showing it not to have been rendered for the proper amount by extrinsic proof, and then re-try the case, when the court rendering the judgment had jurisdiction to do so. This cannot be done, however hard the case may seem, without overturning established principles, and opening a door to litigation that would do infinitely more injury than to allow a smaller wrong, even if it be one, to be done in this case.

In this view of the case we need only look at one other question, one into which the chancellor seems to have gone in his decree, that is, that the decree vesting the title to the land in the purchaser, Finley, provided, that on payment of the last instalment of the purchase money, a copy of said decree should be furnished him for registration.

It is shown that on the 28th of May, 1862, a copy of this decree was furnished, and the same registered. It is claimed that this fact is by presumption of law, conclusive of the fact of payment. We are unable to agree to this proposition. It is a fact from which a conclusion may be drawn, of more or less might, that the payment had been made on the basis that it may fairly be presumed the clerk would not have furnished the copy until the money had been paid. The weight of this fact, however, as evidence, is met and counterbalanced, or neutralized at least, by

Finley *v.* Gaut.

the fact that no satisfaction of the judgment was entered on the execution docket. It was equally in accordance with the requirements of law, and equally contrary to the ordinary course of human conduct, and also to the right performance of official duty on the part of the officer, that Finley should have had the docket satisfied, and that the clerk should have done so, as that the clerk should have given the transcript of the decree before the money had all been paid. It is said, however, that while the clerk is shown to have been an excellent officer, and remarkably accurate and prompt in the performance of his duties, it is shown that the eighty-eight dollars receipt had never been entered on the execution docket. But this argument may cut both ways, for if he failed to enter the credit as the law required, it might be argued that he was equally liable in those disturbed times to have given the copy of the decree, without a compliance with the requirement that the money should be first paid.

Upon the whole we do not feel that we can declare the judgment satisfied from the evidence furnished by this fact alone, in connection with all the circumstances.

The result is, the chancellor's decree must be reversed, and the bill of complainant dismissed; but in view of all the facts we think the costs of both courts should be divided.